## In re Weiss

Before Davis, P. J., Stern, P. J., and Alessandroni, Brown, Jr., and Parry, JJ. Stern, P. J., dissents.

*Frank W. Melvin*, for Committee of Censors.

*Sundheim, Folz & Sundheim*, for respondent.

PER CURIAM, June 5, 1934.—This is a petition presented by the Committee of Censors of the Philadelphia Bar Association for a rule to show cause why the respondent, Lewis Earl Weiss, should not be disciplined.

It appears from the record that about May 12, 1933, a complaint was filed with the Committee of Censors by Cecil P. Mahony against the respondent, who thereupon filed an answer. A subcommittee held hearings on July 7th and October 26, 1933, and took testimony thereon.

From the committee's findings of fact, it appears that the respondent had law offices at 302 Commonwealth Building, Philadelphia, and since early in 1933 operated therefrom a collection agency in connection with his law practice. In furtherance of this business, he induced Simon Harvey, a constable, and Edward W. Henry, a magistrate of the City of Philadelphia, to permit the use of their names on letters to be sent out by the collection agency. Both the magistrate and the constable gave respondent their signatures, in order that they might be reproduced in facsimile on communications from respondent's office and thus create the impression that the letters or notices were sent out with their authority. The respondent then had letterheads and notices printed bearing Harvey's name, with his title as constable, under the armorial bearings of the Commonwealth of Pennsylvania, and giving the respondent's office number and telephone number as those of Harvey. He also had Harvey's name painted on his office door.

The respondent's collection agency had a claim of one Cleary, trading as Philadelphia Optical Institute, against the complainant Mahony, and in an attempt to collect it caused to be sent him between January 30th and April 26, 1933, seven separate communications. The first bore the respondent's signature and stated that unless the matter received immediate attention such action "will be taken as the facts warrant." Four days later, a second letter from the respondent followed, stating that the notice was final and that "tomorrow without further notice our warrant of attorney will be turned over to our constable". On February 8th, a communication on Harvey's letterhead, bearing Harvey's facsimile signature, set forth that a warrant of attorney had been handed to him authorizing him to act unless the bill was paid within 24 hours. This was followed by another letter with a like signature, stating that a copy of a large sign was enclosed which would be posted on the debtor's house before the sale of his belongings after he had been summoned before the magistrate and judgment obtained, and that publication of the sale would also be made in the newspapers, but that payment could still be made "at this office only", if he wanted to avoid the costs.

On February 16th, a communication was sent bearing Harvey's name at the top and his signature at the bottom, in which an attempt appears to have been made to simulate a legal document. It begins: "County of Philadelphia and State of Pennsylvania" and is called "Notice of Legal or Statutory Action"; sets forth the amount of the demand; and closes with a clause beginning: "Now, therefore, unless you remit or appear at this office within five (5) days from date at 12 o'clock noon for payment of said claim, legal action will be brought against you immediately in accordance with the State laws." On the bottom of the paper, the word "Notice" is printed in large type and against it a statement that the sale or transfer of leased property without the consent of the lessor is a criminal offense punishable by fine, imprisonment, or both.

Shortly thereafter, the respondent's name again appears on a paper which is headed "Demand for Payment of Debt, State of Pennsylvania, County of Philadelphia". In the body of this paper, the same language is used as in the foregoing, but on the bottom in the place of the words following "Notice" appears a large red seal. The reverse side is printed in columns. When folded, on one face appears a printed endorsement with a Latin heading to the effect that it is a final notice before the action is brought, and below appears a summary in which is to be inserted the date of the writ, the date of service, the date the writ is returnable, the docket number, the name of the judge, the date of the judgment, and the amount of the judgment and execution. On the other face appears a rather elaborate form which is designed for entries as to the debtor's condi-

tion and situation. The only inference to be drawn from this is that the debtor's friends, his relations, any employers he may have had, any persons with whom he has had business dealings, and his neighbors will all be questioned with regard to his assets, his character, and his reputation. The causes of his delinquency are to be set forth, whether he is incompetent, a drunkard, a spendthrift, or whether his failure to pay his debts is due to his mismanagement, laziness, sickness, or other troubles. Inquiries are to be made of his family, relatives, doctor, and grocer as to whether he does or does not pay his bills.

The last communication which was served[1] on the complainant purports to be a summons "in re debt or demand arising from a contract, expressed or implied", issuing out of Magistrate's Court No. 2 of the City of Philadelphia, bearing the facsimile signature of E. W. Henry, Magistrate, fixing a hearing on May 9, 1933, between 12 and 1 p. m. On the lower lefthand corner of this document the recipient is requested to apply to the respondent for information at his office in the Commonwealth Building.

All these forms, the Committee of Censors finds, were prepared and sent out under the respondent's direction. All were sent out without the particular knowledge of the constable and magistrate, and a similar series was sent to about a hundred other persons. Although it was prepared in his office and printed by his orders, the respondent denied knowledge of the spurious summons, but on this issue of fact the committee found against him. He admitted the other communications in the chain had been prepared or approved by him. The committee found that the order and form of these communications were intended by the respondent to create an impression in the minds of the persons to whom they were addressed that legal action had been commenced against them before the magistrate, and that the communications had the effect of creating such an impression.

We think the committee's findings are fully sustained by the evidence, and the question before us is whether the unethical and improper practice of which the respondent is guilty is such as to disqualify him from the practice of the law.

It is obviously improper for an attorney to send communications to persons, against whom he has claims to collect, in such form as to indicate that an action has been commenced or that legal proceedings are pending to collect the claim when such is not the case. It has been held that the fact that notices from a collecting agency are sent out under the name of an attorney, with his knowledge, makes the attorney responsible for the methods adopted by the association: In re Hutson, 127 App. Div. 492, 111 N. Y. Supp. 731.

The course of conduct pursued by the respondent appears to us to indicate a deliberate and studied scheme to misuse and abuse the power of his office. A series of communications are prepared in which the victim is threatened with legal process and imprisonment and is shown, with no uncertain implication, the prospect of his credit ruined and reputation destroyed throughout every business and social contact he may have.

The composition of most of these papers appears to us both puerile and absurd. The letters when analyzed amount to little more than notice that if the claim is not paid immediately a suit will be brought. But certain of the statements are false, and the whole implication is false. The Fraudulent Conversion Act of 1917, although totally inapplicable, is held over the correspondent in terrorem, and penalties of fine and imprisonment are freely displayed. Inquiries whether he has been put through a non-existent "poor debtors court", whether he has been arrested, for what and when and where, may afford anything but a happy suggestion for the future.

But the respondent did not contemplate that his compositions would be scrutinized by a court; indeed, as soon as he became aware that the complainant had sought legal advice he attempted to suppress the fictitious writs. These documents were designed to delude and oppress the poor, the ignorant, and the unwary. There is nothing in the record to suggest that respondent intended to invoke the aid of a court to collect any of these claims. He proposed to obtain the result of successful litigation without incurring any expense except that of stationery, postage, and printing.

There can be no doubt that the respondent is guilty of improper, unethical, and dishonest practice in the preparation of a fraudulent scheme. He cannot plead the impulse of a sudden temptation. The preparation of his plan involved care and thought and time. Its execution was repeated over a period of months. It appears to us that the respondent has throughout displayed such a lack of moral perception as to demonstrate his unfitness for the practice of the law, and that it is our duty to announce that under the evidence presented to us he should be disbarred.

### Decree

And now, June 5, 1934, upon consideration of the rule taken by the Committee of Censors of the Bar Association of the County of Philadelphia, it is ordered that the rule be made absolute, and the said Lewis Earl Weiss be and is hereby disbarred from practicing at the bar of this court, and that his name be stricken from the roll of attorneys.

Notice of this order to be given by the prothonotary to the Supreme and Superior Courts of Pennsylvania, the several Courts of Common Pleas, the Orphans' Court, and the Municipal Court.

STERN, P. J., dissenting.—I must respectfully dissent from the action of the court in this case. Not that I disagree with the conclusion of my colleagues that the methods of collection pursued by the respondent were highly improper and reprehensible. But I attribute the respondent's conduct more to a young lawyer's poor judgment and lack of good taste in the practice of his profession than to wilful and conscious wrongdoing on his part. I think that an order of disbarment, which in my opinion would be proper where a lawyer has been guilty of crime or continuing unprofessional practice, is harsh in the present case, and at most I would merely suspend the respondent from practice for a limited period.